IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS KELLY, *et al.*, | No. C 05-1287 SI |
| Plaintiffs, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE CERTAIN FORMER DEPUTY CHIEFS FROM FINAL SETTLEMENT** |
| v. | |
| CITY & COUNTY OF SAN FRANCISCO, *et al.*, | |
| Defendants.                    / | |

On June 20, 2008, the Court held a hearing on defendants' motion to exclude certain former deputy chiefs from a final settlement. Having considered the arguments of the parties and the papers submitted, the Court hereby GRANTS defendants' motion to exclude Joseph Asaro, Bernie Lee and Raymond Balzarini from the settlement, but DENIES defendants' motion to exclude Federico Sanchez.

**BACKGROUND**[1]

**I.    Grievance and releases**

Joseph C. Asaro, Federico Sanchez, and Bernie F. Lee are former Deputy Chiefs, and Raymond Balzarini is a former Assistant Deputy Chief, of the San Francisco Fire Department. All four individuals were members of the Municipal Executives' Association ("MEA") at the time of their retirement. In May 2004, MEA filed a grievance under its Memorandum of Understanding ("MOU") with the City of San Francisco on behalf of former deputy fire chiefs, challenging the City's failure to include Training

---

[1] Unless otherwise stated, all of the following factual allegations are taken from defendants' Motion to Exclude Certain Former Deputy Chiefs from Final Settlement.

and Education Achievement pay ("T & E Pay") in severance and lump sum payments. The parties reached a settlement in late 2004, and Asaro and Lee signed general releases upon receipt of lump sum payments "representing full payment for vacation, wellness, vested sick pay, compensatory time off, floating holidays, and severance pay." Bond Decl. Ex. A. Balzarini signed a release in exchange for full payment of severance pay. *Id.* The releases signed by Asaro, Lee and Balzarini "extend[ed] to all claims of every nature and kind, known or unknown . . . that are related to, arising out of, or connected to" the releasing party's employment, and waived "any and all rights under Section 1542 of the California Civil Code."[2] *Id.* Sanchez and Lee signed a general release in return for severance payments under paragraphs 37-39 of the MOU.[3] These releases are limited to claims arising under the MOU, paragraph 2 of which waives any right to sue "with respect to any claim arising under the MOU between the City and the MEA that is related to, arising out of or connected with" the releasor's employment. *Id*. Ex. B.

## II.     Present lawsuit

Plaintiffs filed this class action on February 25, 2005, seeking to recover T & E Pay, Retention Pay and Terrorist Response Training Pay (collectively "premiums") that were allegedly not included in the lump sum payments made by defendants to former Fire Department employees upon separation from employment. Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(o), for failure to pay compensatory time off in lieu of overtime, California Labor Code § 227.3 for failure to pay unused vacation pay, and San Francisco Civil Service Commission ("CSC") Rule 320.16 for failure to pay vested sick leave. In November 2005, this Court granted defendants' motion for judgment on the pleadings as to plaintiffs' second cause of action regarding compensation for unused

---

[2] Section 1542 of the California Civil Code states "a general release does not extend to claims, which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected the settlement with the debtor."

[3] Paragraph 37 of the MOU provides that the City will pay employees for the number of days less than thirty upon which she/he was given notice of removal. Paragraph 38 of the MOU provides that employees with ten or more years of City service will receive one month's severance pay in exchange for a release signed by employee and MEA of any and all claims arising under MOU. Paragraph 39 states that an employee involuntarily returned to a permanent job code may elect to separate from City service and receive one month's severance pay in exchange for such a release.

vacation leave, finding that this claim should be resolved by arbitration under the MOU.[4] *See* Order Granting in part Defendant's Motion for Partial Judgment on the Pleadings. The parties agreed to settle all claims for payment of $654,000 for unpaid wages, to be divided among members of the settlement class, plus attorney's fees and interest. The proposed settlement represents the allegedly underpaid compensatory time off in lieu of overtime, accrued vacation pay and vested sick leave**.** *See* Defendants' Stipulation and [Proposed] Order Extending Deadlines and Revising Notices Regarding Class Settlement Ex. A.

Defendants now move to exclude Asaro, Sanchez, Lee and Balzarini from the settlement on grounds that they are barred from making any further claims for payment by the releases they signed.[5]

## LEGAL STANDARD

The terms of the releases signed by the four former deputy chiefs govern the extent to which they waived their rights to further claims related to their employment, and thus determine the issue of their exclusion from the current settlement. The interpretation of a settlement agreement is governed by the same principles applicable to any contractual agreement. *See Edwards v. Comstock Insurance Co.*, 205 Cal. App. 3d 1164, 1167 (1988). A general release that explicitly purports to cover all claims, known or unknown, and waives the provisions of California Civil Code Section 1542, is valid and enforceable. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1162 (1992). Under California law, "settlement of disputes is strongly favored public policy, for settlement reduces costs for all parties." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (9th Cir. 1998).

California Labor Code Section 206.5 states:

> No Employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment

---

[4] In that order, the Court noted that the parties disputed whether the Court should interpret the MOU to resolve the second cause of action regarding vacation pay, and relatedly whether that claim should be arbitrated. The Court held that because the MOU contained a broad arbitration provision, the Court need not reach those arguments because the arbitrator, and not the Court, must determine whether the vacation pay claim was arbitrable. As of February 2008, no arbitrator had made a decision on whether the claim was arbitrable.

[5] Plaintiffs argue correctly that including the four deputy chiefs in the settlement does not cost the City any additional money, since the settlement amount is capped at $654,000.

3

> of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

Cal. Lab. Code § 206.5; *Jimenez v. JP Morgan Chase & Co.*, No. 08-CV-0152, 2008 WL 2036896, at * 3 (S.D. Cal. May 8, 2008). In addition, California Labor Code Section 227.3 provides that "unless otherwise provided by a collective bargaining agreement . . . all vested vacation shall be paid [to employee upon termination] as wages." Cal. Lab. Code § 227.3. Upon termination of an employee, an employer is bound to pay wages that are conceded to be due. *Sullivan v. Del Conte Masonry Co.*, 238 Cal. App. 2d 630, 633 (1965). However, releases may be valid when a "bona fide dispute exists over whether wages are in fact due." *Jimenez*, 2008 WL 2036896, at *3 (citing *Reynov v. ADP Claims Serv. Group, Inc.*, No. C 06-2056 CW, 2007 U.S. Dist. LEXIS 31631 (N.D. Cal. Apr. 30, 2007)).

FLSA provisions are mandatory, and an employee cannot waive his or her rights under the statute without supervision of a district court or the Secretary of Labor. 29 U.S.C. § 216(c). *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982). While individual FLSA rights cannot be waived, *Barrentine*, 450 U.S. at 740, a party may waive the right to bring a collective FLSA action. *See Jimenez*, 2008 WL 203896, at *5.

**DISCUSSION**

Defendants move to exclude the four deputy chiefs from the settlement on grounds that they signed valid and binding releases upon receipt of their lump sum payouts, which waived claims related to their employment. Defendants argue that Asaro, Sanchez, Lee and Balzarini are barred from making claims for additional lump sum payments as part of the settlement. Plaintiffs contend that the releases do not cover the subject matter of the present lawsuit because the grievance was related to severance pay and not other payouts such as overtime and vested sick leave. Further, plaintiffs contend that because the grievance never alleged failure to receive Retention Pay or Terrorism Response Training Pay, the releases do not preclude those claims.

In *Winet v. Price*, the California Court of Appeals held that a general release may enable parties to permanently terminate their mutual obligations, including unknown or unsuspected claims at the time

4

of signing the release, and that the written agreement of parties who have obtained the advice of legal counsel and execute the release knowingly and voluntarily must be enforced as written to effectuate the parties' intention. 4 Cal. App. 4th at 1163. However, parol evidence is admissible to construe an ambiguity when evidence presented is relevant to prove a meaning to which the language is "reasonably susceptible." *Id.* (citing *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage Co.*, 69 Cal. 2d 33, 37 (1968)). Here, plaintiffs argue that the factual background and circumstances of the release indicate that the releases are not as broad as defendants contend. In so arguing, plaintiffs emphasize the nature of the payments that the individuals received and the context of the grievances, rather than the language of the releases. Plaintiffs further contend that the waivers are ambiguous in that they are internally contradictory: while paragraph three of the "Exhibit A" releases states that the signers are waiving rights related to the grievance, paragraph six of those releases purports to cover any claim related to the signer's employment. *Id.* at 10.

## I. Releases signed by Asaro, Balzarini, and Lee

### A. Release terms

The releases signed by Asaro, Balzarini, and Lee unambiguously waived rights to any claim related to their employment. The releases state:

> 3. [Releasor] understands and expressly agrees that this Release waives any rights [releasor] may have had, now has, or in the future may have to pursue any and all remedies available to him under any cause of action related to the above-reference grievance . . .
>
> 5. [Releasor] and MEA agree to dismiss with prejudice the above referenced grievance . . . as well as any grievance, litigation, and other administrative action related to [releasor's] employment.
>
> 6. [Releasor] and MEA understand and expressly agree that . . . this Release extends to all claims of every nature and kind, known or unknown, suspected or unsuspected, past, present or future, that are related to, arising out of, or connected to [releasor's] employment . . .

Bond Decl. Ex. A. The releases are not internally contradictory. They state that the parties "desire to resolve and settle all disputes or potential disputes regarding [releasor's] employment" and declare on more their one occasion their intention to release each other from all claims, known or unknown. *Id.* The releases expressly waive section 1542 of the California Civil Code, barring even claims which the parties do not know of or suspect to exist at the time of executing the release. *Id.*

5

The parties acknowledge that they had "full opportunity to be represented by and consult with counsel" and signed the releases "voluntarily and without coercion." *Id.* The releases include a merger clause stating that the agreement "supercedes any prior oral or written agreements, and that any modification may only be affected by writing signed by all parties to the agreement." *Id.*

Because the language of the releases is unambiguous, evidence related to the circumstances of the grievance and events leading up to the signing of the releases is irrelevant. Parole evidence is not admissible to contradict the express terms of the agreement. *Winet*, 4 Cal. App. 4th at 1167(citing *Pac. Gas & Elec. Co.*, 69 Cal. 2d at 38). The parties expressly agreed to release any and all claims related to the releasor's employment; thus plaintiffs cannot bring in extrinsic evidence to attempt to construe the release more narrowly when the language of the release is not "reasonably susceptible" to the interpretation alleged by plaintiffs. The claims under the present lawsuit are related to plaintiffs' employment. The Court therefore GRANTS defendants' motion to exclude Asaro, Balzarini, and Lee from the settlement. Holding otherwise would undermine the purpose of settlement to allow parties to terminate their mutual obligations. *Id.* at 1162. California Labor Code and FLSA provisions, however, are generally unwaivable, and will be addressed below.

### B.   Claims under California Labor Code Section 206.5

Plaintiffs contend that under the Labor Code, an employer may not require an employee to sign a release of a wage claim unless the employee actually receives payment for the wages, and a release purporting to do so is unenforceable. Defendants contend that Labor Code Section 206.5 is inapplicable here because the City has not conceded that it owes the former deputy chiefs additional wages. *See Jimenez*, 2008 WL 2036896 at *3. Defendants are correct. Where a bona fide dispute exists over whether wages are in fact due, releases purporting to waive all further wage claims are valid and enforceable. *Id.* The releases signed by Asaro, Lee, and Balzarini state that "there is a good faith dispute over the calculation of lump sum payments," and that "nothing contained in this Release shall constitute or be treated as an admission of liability or wrongdoing by the City. . . which liability or wrongdoing is expressly denied." Bond Decl. Ex. A. Therefore, Asaro, Lee and Balzarini are barred from bringing additional wage claims. Accrued vacation pay is also considered wages under California

1 Labor Code Section 227.3, which defendants have not conceded that they owe, therefore Asaro, Lee and
2 Balzarini are also barred from bringing claims for unused vacation pay.

#### C.  Claims for overtime pay under FLSA

Defendants concede that FLSA provisions are mandatory and unwaivable without supervision of the district court or the Secretary of Labor. FLSA section 207(o) requires the City to pay for accrued compensatory time off in lieu of overtime at the regular rate. In *Jimenez*, 2008 WL 2036896 at *5, a releasor waived her right to bring a collective action but specifically reserved the right to bring an individual FLSA claim for overtime pay. The *Jimenez* court noted that while individual FLSA rights cannot be waived, a party may waive the right to bring a collective FLSA action. *Id*. Asaro, Lee, and Balzarini expressly agreed "not to sue or otherwise institute or in any way actively participate in or voluntarily assist in the prosecution of any legal or administrative proceeding against the city" related to their employment. Bond Decl. Ex. A. The Court finds that these waivers bar the releasors' rights to bring a collective FLSA action. Therefore, the Court GRANTS defendants' motion to exclude Asaro, Lee and Balzarini from the portion of the settlement related to FLSA and representing overtime pay.[6]

### II.  Release signed by Sanchez[7]

The release signed by Sanchez was more narrowly drafted by the parties to be limited to claims arising under the MOU. This release expressly states that the parties "desire to resolve and settle all disputes or potential disputes regarding [releasor's] employment that arise under the Memorandum of Understanding between the City and the MEA," and the releasor waives his rights "with respect to any claim arising under the MOU between the City and the MEA that is related to, arising out of or connected with [releasor's] employment." Bond Decl. Ex. B. Sanchez signed the release in exchange for severance pay, and the release does not affect other agreements independent of the MOU such as

---

[6] The Court need not and therefore does not decide whether Asaro, Lee and Balzarini retain the right to bring individual FLSA claims against the City for overtime pay.

[7] While Lee also signed a narrower release similar to Sanchez's release, he signed the same broader release signed by Asaro and Balzarini and is therefore excluded from this part of the analysis.

7

those arising under state or federal law. *See* McLean Decl. Ex. 1 at ¶¶ 38, 39. The causes of action alleged by plaintiffs in the present lawsuit arise under FLSA, California Labor Code, and CSC Rules. *See* First Amended Complaint. The claims being settled in the class settlement are the claims for compensatory time under FLSA, for vacation pay under the California Labor Code, and for vested sick leave under the CSC Rules. Sidd-Champion Decl. Ex. 1. Contrary to defendants' assertions, the Court did not previously hold that the second cause of action for vacation arose under the MOU; instead, the Court held that an arbitrator must decide whether that claim was subject to arbitration under the MOU. On this record, the Court finds that the claims being settled do not arise under the MOU, and thus Sanchez retains the right to be included in the settlement. The Court therefore DENIES defendants' motion to exclude Sanchez from the settlement.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to exclude Asaro, Lee, and Balzarini from the settlement. The Court DENIES defendant's motion to exclude Sanchez from the settlement. (Docket No. 129).

**IT IS SO ORDERED.**

Dated: June 30, 2008

SUSAN ILLSTON
United States District Judge